**William T. Seely et al., Appellees, v. George R. Watson, Appellant.**

**Gen. No. 5291.**

APPEALS AND ERRORS—*when finding of court not subject to review.* In the absence of a submission of special findings of fact and propositions of law there is nothing left for the Appellate Court to determine other than the sufficiency of the evidence as a whole to sustain the finding and judgment appealed from.

Assumpsit. Appeal from the Circuit Court of Stark county; the Hon. L. D. PUTERBAUGH, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed March 11, 1910. Rehearing denied April 13, 1910.

KERNS & FLING, for appellant.

J. H. RENNICK, for appellees.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Appellees sued appellant to recover royalties for the mining of coal under certain real estate from May

1, 1908, to October 1, 1908, under a written lease. The number of bushels of lump coal, mine run coal and screenings, which had been taken out during that time, was admitted and the cause was submitted to the court without a jury upon a stipulation containing that data, and providing that the only question submitted to the court was the meaning of the word "coal" as used in the lease; that if the court held that it included "slack" plaintiffs should have judgment for $98.38 and if the court held that "coal" did not include "slack" plaintiffs should have judgment for $68.87. The amount involved is small, but the lease runs to June 1, 1926, and the decision will bind the parties in their future dealings. The court entered a finding and a judgment for plaintiffs for $98.38 from which defendant below prosecutes this appeal.

The lease was made June 1, 1901, and was from Amelia T. Seely and her husband to George R. Watson, appellant here. Mrs. Seely leased to Watson "all the coal lying and being under" (describing a farm); it gave the privilege of entry, sinking a shaft, hoisting coal, etc. It provided that the second party was to pay the first party "as rent for said land the sum of one-half cent per bushel for all coal mined under the above described land, payable on the first business day of each month; said party of the second part shall keep a true account of all coal so mined on said land at all times open to the inspection of the party of the first part or her agent," etc. It is clear from the proof that the screenings are coal, and we are of opinion that they are included, necessarily, in the terms "all coal mined." The screenings are not only a part of the coal, but they come to the surface of the ground in an indistinguishable mass with the rest of the coal, and when separated from the coal they still have a value. The proof makes it evident that when a coal merchant, who is in the business of retailing and selling coal to private consumers, orders a carload of coal, it is expected in the trade that he will receive

screened coal, unless he otherwise orders. That is so because it is screened coal that is usually sold to private consumers. We are of opinion, however, that that casts no light upon the question what is meant by "all coal mined" in a lease of this kind. If we are right in this view of the lease, it sustains the judgment.

The mine is situated in Wyoming, in Stark county, and Mrs. Seely had once lived there, but she had removed to Rockford, and she died there some seven years after this lease was made, and left a will which was duly admitted to probate, under which appellees became the owners of the royalty reserved in this lease. Appellant contends that either the words in the lease clearly mean that he shall pay the rent or royalty only on screened coal, or else that the meaning of the words in the lease is ambiguous and that in such case the construction which the parties themselves have placed on the lease must control; and he alleges that he settled with Mrs. Seely during the seven years when she received the royalty solely upon the basis of screened coal. The agent who collected the royalty for Mrs. Seely during the first two years of the lease was out of the state and was not a witness. Appellant testified that he paid to that agent royalty on screened coal only. It is evident from his testimony that he does not know that fact. His books were periodically placed in the hands of Mrs. Seely's agent, and the agent made his own computations and told appellant how much was due from him to Mrs. Seely, and appellant paid the sum named without any inquiry or examination to ascertain upon what basis it was computed. E. S. Teeter was the agent for Mrs. Seely during the last five years of her life and collected and remitted the royalty to her. He lived at Wyoming, and testified that he computed the royalty only upon screened coal. He did not know anything in the form of his remittances which would advise Mrs. Seely whether he was collecting on mine run coal or screened coal.

He testified that she never gave him any instructions to collect on slack or screenings or not to collect on it. He also testified that she did give him instructions to collect on screened coal; and also, just before leaving the witness stand, that she told him not to collect royalty on slack.

Section 61 of the Practice Act of 1907 authorizes either party to submit written propositions of law to the court and to except to the adverse ruling of the court thereon, and also to submit questions of fact in writing to be determined specially by the court. No propositions of law or special findings were submitted to the court in this case. We are unable to know whether the court below held that the meaning of the lease was so plain that the construction of the parties was immaterial, or that it was ambiguous and the construction of the parties would be material, but that the court did not believe the contradictory evidence of the agent Teeter. For all that we can know it may have been the conclusion of the trial judge that he was not warranted in accepting the evidence of Teeter because of his contradictions and because of his manifest friendship for and desire to serve appellant. There was testimony both ways as to how a coal miner would understand the language of this lease. We think it clear that many of the witnesses who interpreted "coal" to mean screened coal were looking at the question from the standpoint of a retail dealer in coal only, and we think the preponderance of the oral testimony is that in a question between the owner of the land and the coal mined under such a lease, the language of this lease would be understood to mean "mine run coal," or all the product taken out of the mine which possessed the characteristics of coal.

The judgment is therefore affirmed

*Affirmed.*